## Case No. 7,965.

### In re LACEY et al.

[12 Blatchf. 322; [2] 10 N. B. R. 477.]

Circuit Court, D. Connecticut. Sept. 15, 1874.

BANKRUPTCY—INVOLUNTARY — ORDER DISMISSING PETITION—COSTS NOT PAID—ANOTHER CREDITOR SUBSTITUTED—FINAL DISCONTINUANCE.

1. K. filed, on the 7th of June, a petition in involuntary bankruptcy in the district court, against L., who appeared and denied the acts of bankruptcy alleged, and demanded a trial by jury, which was ordered to take place at the next August term. At that term the cause was adjourned to the next November term. Meantime, P., another creditor of L., and who had, on the 2d of June, obtained an attachment against the property of L., purchased from K. his claim, and obtained from the judge of the district court, on the 20th of October, with the assent of K. and of L., an order that the petition of K. be dismissed, when all fees due the clerk and marshal should be paid. Such fees were not paid until the first day of the November term. On the 31st of October, C., another creditor of L., presented to said judge a petition praying to be substituted in place of K., as prosecuting creditor, and that the order of October 20th be vacated. The district court made an order to that effect, and that C. be authorized to prosecute the petition of K., and that it stand for trial. On an application by K., L. and P. to this court for a review of the last named order: Held, that the order of October 20th was not a final discontinuance of the proceeding.

2. Under section 42 of the bankruptcy act of March 2d, 1867 (14 Stat. 537), the order of the district court authorizing C. to prosecute the petition of K. was a proper order.

3. The true construction of the 42d section of the bankruptcy act of March 2, 1867 (14 Stat. 537), is, that if the petitioning creditor does not appear and prosecute his petition to an adjudication, any other creditor or creditors (having debts to the required amount) may, at any time while the proceedings are pending, that is to say, on the return day of the order to show

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

cause, or on any subsequent day to which the proceedings may be adjourned, intervene and prosecute.

[Cited in Re Flanagan, Case No. 4,850; Re Sheffer, Id. 12,742.]

[Cited in Re Hawkes, 70 Me. 215; Re Roberts, 71 Me. 393.]

4. This right of intervention is secured to creditors, and no settlement or arrangement by which the petitioning creditor withdraws, or attempts to withdraw, his petition, can defeat it.

[Cited in Re Sheffer, Case No. 12,742.]

5. The above mentioned order of the court, in the interval between one day of hearing and the day to which the proceeding was adjourned, was improvident, and was properly revoked.

6. On such intervention, the prosecution proceeds not upon a new charge of acts of bankruptcy by the intervening creditors, as upon their petition, but upon the original petition previously filed, and upon the allegations therein; and the adjudication will operate upon liens or preferences given or obtained within four months before such original petition was filed.

[In review of the action of the district court of the United States for the district of Connecticut.]

[3] [Lacey, Downs & Co. were, on the 2d day of June, 1873, engaged in manufacturing felt hats in Danbury, Conn., and were indebted about seventy thousand dollars, and had assets of about thirty thousand dollars. On that day the National Pahquioque Bank of Danbury, creditors to about the amount of twenty-five thousand dollars, upon a writ returnable to the Fairfield county superior court at its August term, 1873, served by one Heath, a deputy sheriff of Fairfield county, attached substantially all their estate. Five days after, June 7th, 1873, George King, of New York City, a creditor to the amount of about three thousand five hundred dollars, filed a creditor's petition in the district court for the district of Connecticut against said Lacey, Downs & Co., alleging their indebtedness to him of so much of said amount as was then due (about two thousand dollars), and that they had suspended the payment of their commercial paper for more than fourteen days, and asked an adjudication of bankruptcy against them. An order to show cause was issued, returnable June 16th, A. D. 1873, and a provisional warrant was issued, upon which the marshal, June 9th, 1873, took possession of all the estate of said Lacey, Downs & Co., in the hands of said sheriff, Heath, and of other property to a small amount. On the return day of the order to show cause, Lacey, Downs & Co. appeared by attorney and filed a demand for a jury, and the issue was at once set down in the docket of the district court next to be held on the fourth Tuesday of August, A. D. 1873, and the parties respectively by their counsel entered their appearance. At said August term neither party appeared, and said cause was continued to the next term, to be held on the fourth Tuesday of November, 1873. On the 16th day of

October said bank bought up King's claim and took an assignment of it, and King agreed to discontinue the bankruptcy proceedings. On the 20th day of October, on the application of King, the court entered an order of discontinuance and re-delivery of the property to Heath, upon the payment of the fees of marshal and clerk. The keepers having rendered a bill, to the payment of which the bank objected, and one of them being dangerously sick at the time and incapable of doing business, the marshal transferred the care of the property to one Hull, a director of the bank, as his agent. At this stage of the proceedings for discontinuance, Henry Crofut, another creditor, having learned thereof October 31st, 1873, filed his petition in court, alleging the indebtedness to him, the suspension of certain commercial paper due him for more than fourteen days, etc., and asked to have proceedings on order of discontinuance stayed and vacated, and that he might be allowed to appear on the fourth Tuesday of November, A. D. 1873, and be substituted for said King to prosecute the original petition. An order staying proceedings on said order of discontinuance was issued, and also an order to show cause to King, Lacey, Downs & Co., and said bank, and all appeared and were heard on Crofut's petition, and on the fourth Tuesday of November, A. D. 1873, at the opening of court, Crofut renewed his request to appear, and the court then made the order of which petitioners complain. On the petition of the National Pahquioque Bank and others for review and reversal of the order of the district court.]4

William K. Seeley, for appellants.

Edwin E. Marvin and Samuel Tweedy, for respondent.

WOODRUFF, Circuit Judge. On the 7th of June, 1873, George King, a creditor of the copartnership firm of Lacey, Downs & Co., filed against them, in the district court, his petition, alleging certain acts of bankruptcy, and praying that the said firm, and the copartners therein, be adjudged bankrupt. Upon filing the said petition the usual order was made by the court, requiring the alleged bankrupts to show cause why such adjudication should not be made, which order was returnable on the 16th of the said month of June; and, at the same time, a warrant was issued to the marshal, directing him to take possession of their property, in virtue of which the marshal did take such possession. Upon the 16th of June, the return day of the order to show cause, the parties, the said King (the petitioner), and the alleged bankrupts, appeared, and the latter denied the acts of bankruptcy alleged, and demanded a trial by jury, whereupon the court ordered that such trial by jury be had at the then next term of the district court, to be held on the 4th Tuesday of August following. At

the said August term, neither of the parties, petitioner nor respondents, appeared for trial, but the cause was duly entered on the docket of the said court, and the parties respectively duly entered their appearance thereon. The said cause was thereupon formally continued to the next term of the said court, to be holden on the 4th Tuesday of November, 1873. In this stage of the proceedings in bankruptcy, and after the lapse of four months from the levy of the attachment to be presently mentioned, the National Pahquioque Bank purchased from the petitioning creditor, King, all his claims against the alleged bankrupts, including the debt mentioned in his petition, amounting to upwards of $2,300, and it was agreed between the said bank and King that his said petition and proceedings in bankruptcy should be withdrawn and discontinued. The motive to this purchase and agreement appears in the fact, that the Pahquioque Bank were creditors of Lacey, Downs & Co., to an amount of about twenty-five thousand dollars, and, to secure the collection thereof, they had, on the 2d day of June—five days before the petition in bankruptcy was filed—caused all, or nearly all, of the property of the debtors, amounting in value to about $30,000, to be seized on a writ of attachment, which attachment would, by virtue of the fourteenth section of the bankrupt law, as was believed, be dissolved by the proceedings in bankruptcy, and any preference secured thereby be defeated, should Lacey, Downs & Co. be adjudged bankrupt, and an assignee be appointed, under proceedings so begun in the bankruptcy court by the said King, whereas, on the other hand, such attachment was deemed valid and effectual, as a security to the said bank, as against any proceedings in bankruptcy begun after the lapse of four months from the levy of such attachment. The debts owing by Lacey, Downs & Co. were about $70,000, and the question whether the bank should hold their said attachment in full force, and collect thereby their full claim of about $25,000, or should lose the benefit of their attachment, and come in with the other creditors, and receive, probably little, if anything, over 40 per cent. of such claim, was of much interest, and made the motive to their purchase of the claim of the petitioning creditor quite obvious. If, at that time, the proceedings instituted by King could be effectually terminated and disposed of, no creditor could file a new and original petition within four months after the levy of their attachment, as that period had already elapsed. The bank, therefore, with the said King, and with the assent and consent of the alleged bankrupts, without waiting until the November term of the court, to which the proceedings had been formally continued for trial, as above stated, made application to the judge in vacation, and, on the 20th day of October, 1873, obtained an order that the petition of the said George King "be withdrawn by the said petitioner, and dismissed,

and the proceedings thereon discontinued, and the provisional warrant issued thereon be vacated, whenever and not until all the fees and moneys due clerk and marshal for all services and disbursements on all orders and provisional warrant are fully paid and satisfied, and that, upon such payment, the clerk is directed to pay to William B. Seeley, cashier of the National Pahquioque Bank, the balance of the deposit of $60, which shall then be in the hands of the said clerk." Such deposit had been made by King when he filed his petition. He had assigned it to the . bank, and, on that day, the said bank directed the clerk to satisfy his fees (which were, in fact, less than the deposit) out of the said $60 in his hands. The clerk of the court, thereupon, on the same day, issued an order authorizing the marshal to return the property taken by him under the aforesaid provisional warrant, to the person or persons from whom he received the same, when and not until the fees of the marshal upon the said warrant and bankruptcy proceedings were paid and satisfied. The bank was then and always ready and willing to pay the marshal's fees, and offered to pay such fees whenever the marshal could have the amount thereof determined, but, owing to the illness of one of his agents, and the claim of one or some of his agents, who had been placed in charge of the property, to exorbitant charges, the marshal was unable to procure the adjustment of his bill until after the intervention of another creditor, Henry Crofut, as next to be mentioned, but, on the first day of the said November term, to which the cause had been continued, as above stated, the said fees of the marshal and his disbursements were paid. Meantime this scheme to procure an abandonment of the petition in bankruptcy appears to have become known to another creditor, Henry Crofut, and, on the 31st day of October, he presented his petition to the district judge, stating the facts above recited, his claim as creditor, &c., insisting that he could not, by an arrangement made prior to the then coming November term, be deprived of the right to appear and prosecute the proceedings on the petition of King, if the latter did not appear and prosecute, and praying that he might be substituted in the place of King, as prosecuting creditor, and that the said order of the 20th of October be vacated. Under an order to show cause, returnable on the 17th of November, the parties were fully heard upon the said petition of Crofut, and, upon consideration, it was ordered and decreed, by the district court, that the said order of the 20th of October be vacated and set aside, and the said Henry Crofut be authorized to appear in said proceedings, and prosecute the said petition of the said King against the alleged bankrupts, in the same way and manner, and to the like effect, as the said King might or could do had the said order of October 20th, 1873, never been made, and that the said petition stand for trial in the said district court at its said November term, whereupon, the said Crofut forthwith and at the said November term, appeared in accordance with the said order. Thereupon, the original petitioning creditor, King, the said bank, and the said alleged bankrupts, claiming to be aggrieved by the said decision, order and decree, moved for a review thereof by the circuit court, and the same was allowed by the district court, and bonds for the prosecution of such review were given. On their petition for such review, the matter was heard in this court at the April term last past.

The right of a creditor other than the petitioning creditor to intervene and ask an adjudication upon the original petition, is claimed under the 42d section of the bankrupt law, which—after the direction in the previous sections, that, on filing the petition for an adjudication, the court shall direct the entry of an order on the alleged bankrupt to show cause, on a day named, why he should not be so adjudicated—provides, that, "if the petitioning creditor shall not appear and proceed on the return day, or adjourned day, the court may, upon the petition of any other creditor, to the required amount, proceed to adjudicate on such petition, without requiring a new service or publication of notice to the debtor." But, in behalf of the alleged bankrupts, and of the original petitioner, and especially on behalf of the Pahquioque Bank, it is insisted, that, at any time prior to an actual adjudication that the debtors are bankrupt, and before any other creditor does in fact intervene, the proceedings are strictly inter partes, and completely subject to withdrawal and discontinuance by the petitioning creditor, with the consent of the debtor; also, that such withdrawal and discontinuance are matter of right, which the court cannot refuse or make conditional upon the payment of clerk's or marshal's fees; also, that the order made in this case was not, so far as discontinuance or withdrawal, made conditional, but only that the discharge of the provisional warrant was conditioned on the payment of such fees, and that, therefore, however true it be that the appellants could not claim the restoration of the property by the marshal until such fees were paid, the proceedings for an adjudication of bankruptcy were legally terminated by the order of the 20th of October; and, finally, that, before the intervention of such other creditor, (Crofut,) the condition of the order was complied with and satisfied by the appellants, by authorizing the clerk to take his fees from the money actually in his hands, and by readiness to pay, and offering to pay, to the marshal, his bill for fees, charges and disbursements, so soon as the amount could be ascertained and determined, and that the delay therein was not through any fault or remissness on their part; that, upon these grounds, the proceedings were, in law, terminated and discontinued before any other creditor inter-

vened, and the court erred in attempting afterwards, upon the application of another creditor, to reinstate the proceedings, by revoking the order of October 20th, and permitting such other creditor to prosecute the proceeding upon the original petition, for the purpose of obtaining an adjudication which, upon the appointment of an assignee. might operate to dissolve the attachment levied on the debtor's property by the bank, and destroy the preference or advantage gained thereby.

To this it is answered, in behalf of such other creditor, (the respondent,) that his right to intervene at the November term, to which the proceedings had been formally adjourned or continued, was absolute, if the original petitioning creditor declined to appear and prosecute; that no order of discontinuance could legally be made by the court in the interval, which should cut off that right, and the order of the 20th of October was, therefore, properly revoked and vacated, as improvidently made; and further, it is answered, that the court. if it had power to allow a discontinuance before the November term, was not bound to do so, and did not, in fact, make such order of discontinuance absolute and unconditional; that the court had power to protect its officers by refusing a discontinuance which would defeat their right to hold the property seized, and to make such discontinuance conditional upon the payment of such fees; and that, whatever were the rights of the appellants. the case was, in law and in fact, still in court, by the terms of the only order which is claimed to operate as a discontinuance, and that the reasons why the conditions of the order were not complied with, though they import no fault in the appellants, cannot alter the fact that the case was still pending, and within the control and jurisdiction of the court.

I am inclined strongly to the opinion, that the order of the 20th of October, if it be conceded that the court had power, or that the judge of the court, in vacation, had the power, to make it, was not a final discontinuance of the cause; and that, as a strict legal question, the proceedings were actually pending until the conditions of the order were complied with, whatever hindrances arose to delay such compliance. If such hindrances were without the fault of the appellants, a further application to the court might produce a modification of the conditions, or an entire release therefrom, but, so long as the order stood, it had effect only according to its conditions, and the case was. therefore, still in court. when the other creditor (the respondent) intervened. I should incline to the same opinion even if the right to a better order was conceded, (which I do not, however, at all concede.) A right to have a cause discontinued does not, per se. operate as a discontinuance or divest the court of jurisdiction. Such jurisdiction continues until there is an actual discontinuance. Even if a court refusing a discontinuance commits an error in such refusal, that does not operate as a discontinuance. The order actually made can, therefore, at most, only operate according to its terms. It is not claimed that the Connecticut statute authorizing plaintiffs in civil actions to withdraw their suits without any order of the court and in vacation, has any application to proceedings in bankruptcy in the United States courts; nor could such a claim be successfully maintained.

Without placing my conclusion upon the grounds above intimated, I prefer to rest upon the proper construction of the provision in section 42 of the bankrupt law (14 Stat. 537). That section plainly, I think, contemplates the possibility that parties holding liens or titles acquired within four months next before the filing of a petition in bankruptcy against their debtor will be under a temptation to defeat proceedings thereupon, in order to save the preference they have acquired. In cases like the present, where an attachment on mesne process sweeps almost, and, perhaps, quite, the entire estate into the hands of the attaching creditor, to the exclusion of other creditors, the temptation is very strong; and it was to be expected, that, in such cases, negotiation with the petitioning creditor would often result in his abandonment of the proceeding, when thereby such lien would be preserved. The four months' limitation would expire, and no petition subsequently filed by another creditor, or an adjudication thereon, would operate to prevent the whole estate from being taken by the creditor who had obtained an advantage by such attachment, or other lien or preference. There is, therefore, a great advantage to creditors at large. in pursuing proceedings had upon the first petition which shall be filed against a debtor. If he has, in fact, committed acts of bankruptcy, it is the policy and purpose of the bankrupt act to give the right of equal distribution among the creditors. in spite of preferences and attachment liens acquired within four months before petition filed. It is not contemplated that every creditor will file a petition. If, perchance. more than one be filed, the proceedings to adjudication are to be had. in general, upon the one first filed; and this is manifestly because that most nearly secures to all creditors the equal distribution contemplated. Such considerations prompted the provisions of the 42d section, and may properly assist in its interpretation; and that interpretation will be further assisted, by bearing in mind, that, after an actual adjudication, there is no need of special authority to another creditor or other creditors to appear and prosecute. Upon the adjudication, the rights of all creditors having debts provable against the estate become fixed and certain. The petitioning creditor cannot, after that, withdraw the proceeding,

and his abandonment thereof cannot prevent any creditor from proving his debt and appearing in court to claim the benefit of the adjudication. In that sense, the title of all creditors to have an assignee appointed, and to compel the distribution of the estate, becomes fixed and vested—in that sense. all creditors, by proving their debts, become. on the adjudication, parties to the proceedings. There was, then, an interval in which proceedings in bankruptcy on the petition of a creditor are, in their nature, strictly inter partes, within the control of the petitioning creditor, and liable to be abandoned or discontinued, so that no other creditor would derive any advantage therefrom. The act might have left the proceedings in that condition, in which case no right or interest in the matter would belong to any other creditor until an actual adjudication therein declaring the debtor bankrupt. Had the act left the subject in that condition, every creditor, in order that he might be safe, would have been compelled to file his own petition, where an act of bankruptcy was committed, and so very many proceedings would be begun, and very large and needless expense would be incurred, or the design and purpose of the act would fail. An obvious mode of avoiding such unnecessary trouble and expense was to permit any creditor to come in and prosecute a petition filed by another, who, having begun, declined to go on with the prosecution; and this would not only save such unnecessary trouble and expense, but it would guard the creditors against the success of expedients to preserve attachments and preferential transfers or payments, above alluded to.

What, then, does the act provide. and how is it to be construed? By section 40, on the filing of a petition by a creditor, the court must direct the entry of an order on the debtor, to show cause why the prayer of the petition should not be granted. Such order is made returnable on a day named. Such order must be served. If not served five days before the return day, the court must adjourn the proceedings and direct service forthwith. If the debtor appears on the said return day, or on the day to which, for the purpose of such service. the matter was adjourned, he may deny the acts of bankruptcy charged, and the court is required to proceed summarily to hear the allegations, and may adjourn the proceedings from time to time, on good cause shown; and, if the debtor demands a trial by jury, the court shall order a trial by jury at the next term of the court. After these and other detailed regulations. the 42d section provides, that, "if the petitioning creditor shall not appear and proceed on the return day, or adjourned day, the court may, upon the petition of any other creditor, to the required amount, proceed to adjudicate on such petition, without requiring a new service or publication of notice to the debtor." This last-named clause of the statute contemplates two

possible exigencies—one. that the petitioning creditor, abandoning the proceedings, may not appear; the other, that the petitioning creditor may not proceed with the prosecution. In either event, any other creditor may intervene, and, on his application, the court may proceed to an adjudication. This right of intervention it is not in the power of the petitioning creditor or of the bankrupt to cut off or defeat by any arrangement between themselves; and any action of the court which prevented or defeated such right of intervention, is erroneous and in violation of the statute. The vital inquiry is, therefore—at what precise stage in the proceeding does the right of intervention exist? and this is another form of enquiring,—what is meant, in the statute, by "on the return day or adjourned day," when the original petitioning creditor does not appear and proceed? Does it mean, that. if the petitioning creditor appears on the return day, and so far proceeds in the matter that an adjournment or continuance of the proceeding to a future time is had, the right of other creditors to intervene is lost or defeated, and that the petitioning creditor may then abandon or discontinue the proceedings? Does the expression "on the return day or adjourned day" mean, only, on the return day or on the day to which, for the purpose of service on the debtor, the proceedings may be adjourned; or does it mean, on the return day, or on any day thereafter to which the proceedings may, for any cause, be adjourned, down to the time of adjudication? If the right of intervention was limited to the return day, or to the day to which, for the purpose of service on the debtor, the cause was adjourned, the right of intervention given to other creditors would be of little practical value. It could be defeated at the will of the petitioning creditor, by his appearance and taking any step in the proceeding, and, on procuring a further adjournment, he could. by then abandoning the proceedings. deprive all other creditors of the opportunity to come in and prosecute the original petition. By this means. a scheme devised in collusion with attaching or preferred creditors would be completely successful.

In my opinion, the adjourned day, on which, if the petitioning creditor does not appear and proceed to an adjudication, another creditor may appear and prosecute, is any day to which the proceeding on the order to show cause may be adjourned for the purpose of inquiring into the allegation of the acts of bankruptcy. Where the order to show cause has been duly served. and, as in the present case, both the petitioning creditor and the debtors do appear on the return day, the act contemplates probable summary enquiry into the matters alleged; and if, in the taking of proofs, or for the trial by a jury, or for the requisite consideration of the court, postponement becomes necessary. the proceeding is, nevertheless, a proceeding as of the return day of the order to show cause, and, for all

purposes affecting the right of other creditors to intervene, should be so regarded. The section itself gives the court power to adjourn from time to time, and it would be little less than an absurdity to provide, that, if the petitioner fails to appear and proceed before any adjournment is had, another creditor may intervene and prosecute, but, if the petitioning creditor appears and proceeds to an adjournment of the proceedings, the right to so intervene is defeated, the petitioning creditor may then abandon the proceedings, and the consequences against which this provision of the statute was intended to guard will then ensue. The right of the creditor to intervene is on the return day or on any adjourned day. This, in view of the power of adjournment expressly given in the same section, is what the words "on the return day or adjourned day" mean. The purpose of the statute was broadly this—if the petitioning creditor, having begun the proceeding, does not appear and prosecute his petition to an adjudication, another creditor may do so while the proceedings are pending, that is to say, on the return day of the order to show cause, or on any day to which the proceedings may be adjourned for showing cause. Doubtless, if, on such adjourned day, the petitioning creditor does not appear and proceed, and no creditor applies to be permitted to prosecute the original petition, the proceedings may be finally dismissed or discontinued; but, the right to apply, and the power of the court to permit such other creditor to prosecute, are not to be defeated by a collusive arrangement between the petitioning creditor and a claimant under attachment or preferential lien, payment or transfer, which an adjudication upon the original petition would dissolve or remove. The argument, that "adjourned day," in the clause in question, means, only, that adjourned day named in the previous section, which is given for the purpose only of service of notice to the debtor of the petition filed against him, is quite too narrow a construction of the statute, and would plainly defeat the beneficial purposes of the provision itself. The more just and liberal construction of the clause, which makes "adjourned day" mean any day to which, before an adjudication, the proceedings under the order to show cause may be adjourned, does no violence to the language of the statute; it best secures the object for which the clause was inserted in the statute; and, without such interpretation, the clause would be practically useless. In giving this construction to the clause in question, we conform to the decision of the courts in England, giving a like construction to analogous provisions in the statutes of bankruptcy in that kingdom. A striking instance of this, and containing reasoning quite analogous to that herein above pursued, is found in Kynaston v. Davis, 15 Mees. & W. 708. In that case, the construction of the act of 5 & 6 Vict. c. 122, was under consideration. By that act it was provided, that, if the fiat be not opened by the petitioning creditor within three days after its return, or within such extended term as might be allowed by the court, the court might, on the application of any other creditor, open the fiat and proceed to an adjudication. The court held, that, under this language, the right of such other creditor to intervene was secured down to the time of an adjudication; and that the object of the enactment was to enable any other creditor to proceed, where the creditor who obtained the fiat was unable or unwilling to do so, and had abandoned the fiat—an object which would be defeated, in almost every case, if a narrow and literal construction of the words "open the fiat," insisted upon by the defendant, were adopted. The observations of Baron Parke, in deciding the case, are quite relevant to the present; and he refers to other cases in which the courts have given to the English statutes a construction adapted to secure their design and purpose, against claims to a mere literal or technical construction. Some analogies may also be found in English cases, which, though they relate to language quite different from the terms of the section of our law now under discussion, shed some light upon the subject, by suggesting views which should govern the interpretation of the language employed. Ex parte Magnus, 2 Mont. D. & D. 604; Ex parte Saunders, 3 Mont. & A. 206; Ex parte Cousins, 2 Glyn & J. 270; Ex parte Goldsmid, 1 De Gex & J. 257; Ex parte Haines, 3 De Gex & J. 58.

It is insisted, on behalf of the appellants, that, if the right of intervention existed notwithstanding the order of the 20th of October, the order under review was, nevertheless, erroneous, in this, that, according to the terms of the 42d section, the court are to proceed to adjudicate not upon the petition originally filed by King, but upon the new petition of the intervening creditor; that the only purpose of the clause cited from the 42d section was to treat the alleged bankrupts as in court, by virtue of the former order to show cause and service thereof, and to dispense with any further service of notice, but in court only to submit to a proceeding on the new petition; and that it was, therefore, erroneous for the court to permit the intervening creditor "to prosecute the original petition of King in the same way and manner and to the like effect as the said King might or could do" if the previous order for discontinuance had not been made. It is obvious, that this suggestion refuses any recognition of the reasons above assumed to have induced the provision under consideration, and denies that congress had any such object or purpose of benefit or advantage to creditors as in the discussion thus far we have stated. No such object or purpose, or benefit to other creditors, is promoted by the provision, if such be its true meaning. If so construed, it simply authorizes other creditors to present a new petition and treat the alleged bankrupt as in

court to receive it, and that is all. In other words, it enables another creditor to require the court to entertain his own independent petition without the duty of ordering a new service of an order to show cause thereon. When it is remembered that no leave was necessary to enable other creditors to file their several independent petitions on that or on any other day, it must be conceded, that dispensing with a further service, if they came in on the failure of the first petitioning creditor to appear and proceed, was a very small concession. The considerations already suggested, founded upon the design and object of the law, the reasons why each creditor ought not to be required to file a separate petition in order to secure the right of equal distribution, the analogies found in the English bankrupt acts, which look to an actual substitution of the intervening creditor for the original petitioner, and in the very proceedings begun by the latter, are all overlooked or disregarded in the construction thus lastly contended for. Nevertheless, whatever reasons may be suggested, and whatever may be supposed speculatively to have been the object and purpose of the clause, the court must deal with the provision as it is found in the law. We must take it as it is, and, if it does not, when fairly and reasonably construed, secure such supposed object, or effect the supposed beneficial purposes in favor of other creditors, we should be compelled to say that the law is so framed as to fail in this respect.

The claim requires a recurrence to the precise language of the provision, viz., "if the petitioning creditor shall not appear and proceed on the return day, or adjourned day, the court may, upon the petition of any other creditor, to the required amount, proceed to adjudicate on such petition, without requiring a new service or publication of notice to the debtor." The force of the argument is made to rest upon the words "on such petition." On the ordinary rule, that "such" refers to the last antecedent, namely, the petition of another creditor, it is supposed that the court are to adjudicate upon the acts of bankruptcy charged in the new petition only, and with such effect as if no former petition had been filed, (new notice only being dispensed with,) the former petition, and all proceedings thus far had thereon, dropping out entirely, as if never made or taken. The rule of grammatical construction thus insisted upon is by no means conclusive. We know, by observation, that hardly any rule governing the use of language is more frequently violated. We must look at the context, consider the relation of the clause under construction to other parts of the section, and to other sections connected with the subject, and consider, also, if we can, the design and object of the clause, the conveniences or benefits it was intended to secure or confer, and the evils, if any, which it was intended to prevent, and

if, upon a review of all the considerations thence arising, it appears that "such petition" was the petition which was the subject of the prior part of the section, and of the two preceding sections, viz., the petition of the original petitioning creditor, we should so hold, notwithstanding another petition is named in immediate prior connection with those terms, and should thereupon read the clause, "the court may, upon the application of any other creditor, to the required amount, proceed to adjudicate on such petition." This is, I think, the true meaning. The subject of the preceding sections, and of the prior portion of the 42d section, is, solely, the petition of a creditor alleging acts of bankruptcy, the preliminary proceedings to give an opportunity to the debtor to appear and submit to an adjudication, or to deny the acts of bankruptcy and make up an issue to be tried either summarily or by a jury, upon the allegations of the parties respectively, and a direction to the court to adjudicate the question whether the debtor is or is not bankrupt, according to the proofs and finding thereon whether the allegations of the petition are or are not proved. Provision is made for an adjudication if the debtor does not appear, provision is made for a dismissal of the proceeding if the proof fails to establish the allegations in the petition, and then provision is made that, if the petitioning creditor does not appear, the court may, upon the petition of any other creditor to the required amount, proceed to adjudicate on such petition. I cannot resist the conclusion, that this means that the court may proceed to adjudicate upon the allegations upon which the order to show cause was granted, and which the petitioning creditor neglects to pursue, the allegations which have been put in issue, (as the case may be,) the allegations which the court is then sitting to try and determine. Intervention by another creditor in a pending proceeding, and not institution of a new proceeding, was the intent and meaning, as, in the English statute, substitution of the intervening creditor for the petitioning creditor is provided for. The words "on the petition of another creditor" do not naturally import a new petition, charging acts of bankruptcy, to be themselves the subject of denial and trial thereupon, but a petition asking the court to proceed to an adjudication. The court is to proceed to an adjudication not of its own motion, not without a prosecuting party, but at the instance of another creditor petitioning therefor. The fact that this privilege of intervention was limited to a creditor to the required amount rather favors than prevents this interpretation. Other sections confine the right to file an original petition to creditors to whom at least $250 is due, and, if a new petition, to be treated as an original and independent allegation of acts of bankruptcy, was here contemplated, it was unnecessary to renew the limitation. But, it

*f*

was fitting and proper to say, where a petitioning creditor abandons his petition, no creditor shall take it up and proceed thereon who could not himself have petitioned. And this is also conformable to the English statute, which does not allow another creditor to be substituted for the petitioning creditor who fails to prosecute, unless such other creditor be, by his relation to the subject, himself competent to have prosecuted the proceedings. Enough has already been said of the evil of a construction which would drive all the creditors of a debtor who had committed an act of bankruptcy, to file their several and numerous petitions, that they may be safe. Probably no acts of bankruptcy are so generally the ground of petition as preferences to favored creditors, or other transfers, or suffering property to be taken on attachment or other process, which are valid if petitions in bankruptcy are not filed within four months; and even fraudulent conveyances, and various other frauds and misconduct, cannot be made the basis of an adjudication of bankruptcy, unless the petition therefor is filed within six months; and so every creditor must file his petition or submit to the hazard that some influence may induce the withdrawal of pending petitions and he be remediless. It is said that there are reasons why the law should permit a creditor to intervene and prosecute such pending petition, but they do not show that such is, in fact, the law as it was enacted. This is true, but, when the statute will rationally admit of two interpretations, such considerations are entitled to great force; and especially so when, upon a review of the whole statute, it is manifest that it was not contemplated that each creditor would file a petition, and that, although it may happen that more than one is filed, the adjudication, if both are in the same jurisdiction, is to be upon the one first filed. That the words "such petition" mean the original petition seems to be further indicated by the fact that the court are to proceed thereon without further notice to the debtor. He has had notice of its allegations, he is in court prepared to answer thereto, prepared also to try their truth or establish his denial, and the fact that he is to meet in the contest the intervening creditor instead of the original petitioner is not of the least moment to him. But, surely, it was not the intention of the law to permit a new petition, containing (for aught that is here found to the contrary) new allegations of fraud or other acts of bankruptcy, and authorize the court to proceed to an adjudication thereon without further notice. According to the claim made, the intervening creditor, on the very day, and, as the case may be, after the cause is set down for trial and the jury are present, files his new petition, and, without further notice to the debtor, the court may proceed to an adjudication thereon. I cannot think that this is what is meant. It

may be answered, that no just tribunal would fail, if new allegations were found in the new petition, to give time to the debtor to prepare his defence, and, instead of proceeding, to postpone proceeding. The reply is—no legislature would authorize the court to proceed. What the court may do is, proceed to investigate the allegations already before them, and of which the debtor already has notice, and has come to meet. And, once more, let it be conceded that the words "on such petition" should have their grammatical reading, and that they mean, on the petition of another creditor, it does not follow that the original petition is to have no further influence upon the proceedings. What, according to the fair intent of the provision, should the petition of such other creditor show, in order to bring him within the privilege of intervening? For, let it be borne in mind that he needs no privilege to file his own independent petition and bring the debtor to answer its allegations, and with every advantage which accrues to him from the filing thereof on the day when he files it. What, then, where a creditor comes in under this 42d section, should his petition state? If that may be answered by the section itself, it need only show the facts which, by that section, must exist in order to entitle him to call upon the court to proceed to an adjudication; and these are, the pending of the original petition, the order to show cause thereon and what has been done thereunder, his own competency to invoke the action of the court, and his call upon the court to proceed. Even these matters may be denied by the debtor; and it is, in a just sense, true, that, if the court proceed, the proceeding is on his petition. Thereafter, the contest is between him and the debtor, and not between the debtor and the original petitioner. It is his petition which brings him into the controversy and makes him the party prosecuting.

The construction we thus give to the 42d section of the bankrupt act conforms to the views expressed in several of the district courts. See In re Camden Rolling Mill Co. [Case No. 2,338]; In re Olmsted [Id. 10,505]; In re Mendenhall [Id. 9,424].

These views necessarily lead to the conclusion, that the order of the 20th of October, permitting a discontinuance, was improvidently made, and was properly revoked or vacated. At the November term, to which the proceedings had been adjourned or continued, other creditors had an express statute right to apply, and the court had power to permit such applying creditors to appear and prosecute the original petition. Indeed, I think it was the duty of the court, on such application, to proceed to an adjudication. This conclusion renders it unnecessary to express any further opinion upon the other points which were argued upon the hearing of this appeal or review. The order must be affirmed, with costs.